# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:16-cv-00030-MR-DLH

| | |
|---|---|
| TRIBAL CASINO GAMING ENTERPRISE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>W.G. YATES & SONS CONSTRUCTION COMPANY, )<br>RENTENBACK CONSTRUCTORS INCORPORATED, and METROMONT )<br>CORPORATION, )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on numerous motions filed by the parties. The Plaintiff, Tribal Casino Gaming Enterprise ("TCGE"), has filed motions to stay this matter pending arbitration, to compel arbitration, and to stay all pending deadlines. [Docs. 30; 32]. Defendant W.G. Yates & Sons Construction Company ("Yates") and Defendant Rentenback Constructors Incorporated ("RCI") jointly have filed a motion to stay the arbitration initiated by TCGE. [Doc. 47]. Defendant Metromont Corporation ("Metromont") has filed motions to stay, deny, and enjoin the arbitration initiated by TCGE and

to expedite the consideration of TCGE's motions to stay this matter and compel arbitration. [Docs. 43; 45; 49].

## BACKGROUND

On April 3, 2008, TCGE entered into a construction contract with Yates and RCI (as joint general contractors), inter alia, to expand the facilities at Harrah's Cherokee Casino in Cherokee, North Carolina. [Doc. 3 at 3]. This project included the construction of two separate parking decks. One parking deck was an 8-level, 2,300+ space parking garage to be used by patrons, guests, and employees of Harrah's Cherokee Casino (the "Casino Deck"). The other deck was a 6-level, 1,200 space parking garage connected to the Harrah's Cherokee Hotel and intended for use by hotel guests (the "Hotel Deck"). [Doc. 40 at 2-3]. Yates/RCI, in turn, hired Metromont pursuant to a subcontract to build the parking decks. [Doc. 3 at 3].

Following the construction of the parking decks, TCGE alleges that certain components of them failed. [Id. at 5]. On February 19, 2015, TCGE reported that a ramp in the smaller Hotel Deck had partially collapsed. [Doc. 40 at 3]. The partial collapse of the Hotel Deck is the subject of this lawsuit filed by TCGE on February 9, 2016. [Id.].

TCGE brought this diversity action seeking damages due to the partial collapse of the Hotel Deck based on claims for breach of contract, breach of

warranty, negligence, gross negligence, and unfair and deceptive trade practices. [Doc. 3 at 8-16]. Yates and RCI filed a joint Answer admitting that they were the general contractors for TCGE's parking decks but denying any liability for the Hotel Deck's collapse. [Doc. 27]. Similarly, Metromont admitted in its Amended Answer that it entered into a subcontract with Yates/RCI to provide precast concrete materials and construction services for the construction of TCGE's parking decks but denying any liability for the Hotel Deck's collapse. [Doc. 28].

The present dispute pertains to an arbitration clause contained in the general contract[1] executed by and between TCGE and Yates/RCI. This arbitration clause, found at section 26.5.B of the general contract, provides in full as follows:

> Arbitration. ***Any controversy or claim arising out of or relating to this Agreement shall, except to the extent modified by the mutual agreement of the parties be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association*** and judgment upon the award rendered by the arbitrators may be entered in a court subject to the provisions of this Section and Section 26.4.2.(ii) above. Either party may specify and require that any arbitrator selected shall be an attorney licensed to practice law in the North Carolina or a United States District Court. If more than one arbitrator is used, Owner shall select one, the

---

[1] Article 1.0 of the *subcontract* executed by Metromont has an adoption clause which provides, in pertinent part, that Metromont "shall assume toward [Yates/RCI] all the obligations and responsibilities which [Yates/RCI], by the Prime Contract, assumes toward [TCGE]." [Doc. 31-2 at 4].

3

Contractor shall select one, and the two so selected shall select a third. The party desiring to submit any matter to arbitration under this Section shall do so by written notice to the other party and said notice shall set forth the item(s) to be arbitrated, such party's position as to such items and such party's choice of arbitrator. The party receiving said arbitration notice shall have fifteen (15) days after receipt of such notice to designate one of the remaining two arbitrators by written notice to the first party and to set forth in writing its position as to such terms. The two chosen arbitrators, within fifteen (15) days after designation, shall select the third arbitrator. ***The arbitration panel shall be required to render a decision within thirty (30) days after being notified of their selection.*** The fees and expenses of the arbitration panel shall be paid by the non-prevailing party unless the arbitrators determine there is no prevailing party, in which case the parties shall each pay one-half (1/2) of such expenses. In all arbitration proceedings submitted to the arbitration panel, the panel shall be required to agree upon and approve the substantive position advocated by either Owner or Contractor with respect to each disputed item. Any decision rendered by the panel that does not reflect a substantive position advocated by either Owner or Contractor shall be beyond the scope of authority granted to the panel and shall be void. The arbitrators shall be persons familiar, by profession or experience, with the issue(s) In controversy. The awards of any arbitration shall be governed by Title 9 of the United States Code except as may be changed or limited by the provisions of this Agreement. The parties agree that binding arbitration shall be the sole remedy as to financial disputes arising out of this Agreement and that disputes requiring injunctive or declaratory relief shall be pursued as provided in this Agreement unless the parties mutually agree otherwise.

The parties agree that the ***only grounds for appeal of any arbitration award*** procured pursuant to this Article 26 shall be:

A. where the award was procured by corruption, fraud or undue means;
B. where there was evident partiality or corruption in the arbitrators or any of them;

4

C. ***where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced***;
D. where the arbitrators exceeded their powers or imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made; and/or
E. where an award is vacated and the time within which this Agreement required an award to be made has not expired, the Court may, in its discretion direct a rehearing by the arbitrators.

The parties agree that an arbitration award appealed pursuant to this Article 26 shall not be subject to review or modification by the Court, but shall be (i) affirmed strictly as rendered by the arbitrators, or (ii) vacated. Notwithstanding any laws, rules or ordinances that might allow for a longer time period for appeal the parties agree that an arbitration award rendered pursuant to this Article 26 shall be deemed final for enforcing and executing an arbitration award as authorized herein if such appeal has not been filed with the Court within thirty (30) calendar days of the date of the arbitration panel's written order issuing an arbitration award.

[Doc. 30-1 at 4-5] (emphasis added).

On February 9, 2016, TCGE invoked this arbitration clause by filing a demand for arbitration with the American Arbitration Association ("AAA") and by asserting a claim based upon the partial collapse of the Hotel Deck. [Doc. 31-3]. On the same date it filed this action. On May 6, 2016, TCGE filed a "Motion to Stay Pending Arbitration and to Compel Arbitration" in this matter. [Doc. 30]. On May 17, 2016, TCGE filed an amended demand with the AAA

which included the designation of Ray Owens as its arbitrator. [Doc. 50 at 7-8]. This set in motion the requirement under the arbitration clause that Yates/RCI respond and designate a second arbitrator within 15 days. The arbitration clause then directs "[t]he two chosen arbitrators, within fifteen (15) days after designation, shall select the third arbitrator. The arbitration panel shall be required to render a decision within thirty (30) days after being notified of their selection." [Doc. 30-1 at 4]. This very compressed schedule having been initiated, the parties filed the motions at issue herein. The Court thereupon conducted a hearing on June 21, 2016.

## DISCUSSION

Succinctly stated, the parties take the following positions with regard to the arbitration clause. TCGE contends that the arbitration clause is enforceable against Yates/RCI, and that based thereon the Federal Arbitration Act and corresponding North Carolina Revised Uniform Arbitration Act require that the Court compel arbitration and stay this action pending the completion thereof. Further, TCGE contends that Metromont may be compelled to arbitrate the claims against it because Metromont's subcontract with Yates/RCI contains the adoption clause subjecting Metromont to any obligations Yates/RCI has to TCGE pursuant to the general contract. [Doc. 31 at 4]. Yates/RCI, while not challenging the validity

6

of the general contract, contend that TCGE's claim falls outside the scope of the arbitration clause, or alternatively, that the arbitration clause itself is unenforceable due to its unreasonably short time period within which the arbitration panel must render a decision. [Doc. 40 at 5-6]. Metromont, in turn, argues that the arbitration clause is unenforceable as its timeframe for resolving this dispute, together with its other mandatory provisions, violates the constitutional guarantees of due process and fundamental fairness. Further, Metromont argues that the subcontract's adoption clause provides TCGE no legal basis to bring Metromont into any arbitration proceeding commenced against Yates/RCI. [Doc. 42 at 7-8].

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Bailey v. Ford Motor Co., 780 S.E.2d 920, 924 (N.C. App. 2015) (quoting Peabody Holding v. United Mine Workers of America, 665 F.3d 96, 103 (4th Cir. 2012)). See also, Epic Games, Inc. v. Murphy-Johnson, 785 S.E.2d 137, 142 (N.C. App. 2016); Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989); Rodgers Builders, Inc. v. McQueen, 76 N.C. App. 16, 23, 331 S.E.2d 726, 731 (1985). The threshold matters of whether a dispute is to be resolved in arbitration, what is to be so resolved, and how it is to be resolved, constitute the question of "arbitrability."

7

Arbitrability is further divided into "substantive arbitrability," which pertains to the questions of whether the dispute is to be arbitrated and what such arbitration shall encompass; and "procedural arbitrability," which pertains to the manner by which the dispute will be resolved. Both substantive and procedural arbitrability are governed by the agreement of the parties. The parties agreed that their contract should be construed in accord with North Carolina law. [Doc. 40-2 at 59 ¶ 26.4.1].

> [I]t is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide. If the contract is silent on the matter of who primarily is to decide "threshold" questions about arbitration, courts determine the parties' intent with the help of presumptions. . . . [C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability."

Bailey, 780 S.E.2d at 924-25 (quoting BG Group, PLC v. Republic of Argentina, 134 S.Ct. 1198, 1206-07 (2014)). As observed by the Supreme Court in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995),

> one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

Id. at 945. What follows from this observation is that litigants enjoy a substantial right in having courts of law construe disputed contractual provisions, unless the parties explicitly agree otherwise. "[A] party who has

8

not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract)." Id. at 942. Therefore, courts should not presume that the parties agreed to arbitrate the issue of arbitrability unless there is "clear and unmistakable evidence" that they did so. Id. at 944; Fontana v. S.E. Anesthesiology Consultants, P.A., 221 N.C. App. 582, 589, 729 S.E.2d 80, 86 (2012) ("To determine if a particular dispute is subject to arbitration, this Court must examine the language of the agreement, including the arbitration clause in particular, and determine if the dispute falls within its scope.").

While the contract at issue in this case has an extensive and detailed provision regarding the resolution of disputes in arbitration, it is silent on the question of who (court or arbitrator) shall decide matters of substantive arbitrability. Plaintiff points to the sentence in the arbitration provision of the contract that says: "Any controversy or claim arising out of or relating to this Agreement shall . . . be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . " [Doc. 40-2 at 61]. At the time the parties executed their contracts in 2008, the following AAA rule was in place: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." A.A.A. Comm.

9

Arb. R-7(a) (2007).  [Doc. 55-1 at 12-13].  As such, the parties agreed, by incorporation of these Rules, that certain aspects of substantive arbitrability would be decided by the arbitration panel rather than the Court.  They, therefore, rebutted the presumption that the Court would decide issues as to *existence, scope and validity* of the arbitration agreement.

In resisting that this matter be referred to arbitration, the Defendants do not challenge the existence or validity of the arbitration provision.  They argue that it is unenforceable as applied to the circumstances at hand.  The Rules, as incorporated into the 2008 contract, do not delegate all matters of substantive arbitrability to the arbitration panel.  This is clearly illustrated by the 2013 amendments to the Rules, which broadened the arbitration panel's authority.  The 2013 version of Rule 7(a) states:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim.*" A.A.A. Comm. Arb. R-7(a) (2013) (emphasis added).  [Doc. 55-2 at 13].   As explained by the AAA, beginning in 2013 and henceforth, "Paragraph (a) clarifies that the arbitrator has the power to rule on the arbitrability of any claim or counterclaim." [Doc. 56-1 at 4].  If the parties had incorporated this language into their agreement, it would be clear that all matters of arbitrability, substantive and procedural,

were delegated to the arbitration panel for disposition. The language that the parties actually incorporated into their agreement, however, only delegated the substantive arbitrability issues of existence, scope and validity. As to all other issues of substantive arbitrability, including enforceability, the presumption is not rebutted, and these issues are left for the Court. For these reasons, the Court concludes as a matter of law that the parties agreed that the Court would decide the issue of whether the arbitration provision is enforceable under the circumstances present here.

The Court thus having decided that it possesses the power to determine arbitrability, the Defendants ask the Court to declare the arbitration clause unenforceable, and thus not refer this matter to arbitration. As a broad proposition, questions about which claims fall within the ambit of an arbitration clause should be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). See also, Epic Games, 785 S.E.2d at 143; Johnston County v. R.N. Rouse & Co., 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Should any doubts exist, therefore, the arbitration provision should be read to be enforceable and the dispute should be referred to arbitration, unless the provision cannot be reconciled to either the agreement as expressed by the parties or the broad

11

concepts of due process. See generally, Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).

Whether couched in terms of contractual impossibility due to unreasonable time constraints, or constitutional invalidity based upon due process and fundamental fairness concerns, Defendants' unenforceability arguments center upon the 30-day decision requirement contained in the arbitration clause. Pursuant to that clause, the arbitration panel "shall be required to render a decision within thirty (30) days after being notified of their selection." [Doc. 30-1 at 4]. The Defendants rightly point out that allowing an arbitration panel only 30 days to sort out the liability for the post-construction, partial collapse of two parking garages would be a Herculean feat, if not utterly impossible. The Defendants, however, fail to read the 30-day provision in pari materia with the rest of the arbitration clause.

The arbitration clause specifies that any financial controversy or claim arising out of or relating to the parties' contract, of which this dispute most certainly is one, must be resolved by binding arbitration within 30 days. This is understandable given that, during any significant construction project, billing claims and disputes often arise which require immediate attention and resolution lest the project grind to a halt. In this case, however, since construction has long since been completed, the arbitration clause

12

anticipates claims or controversies that might require more than 30 days to resolve. Section 26.5.B.C. of the arbitration clause provides that an arbitration award may be vacated for misconduct of the arbitration panel if the panel, upon sufficient cause, (1) refuses to postpone the hearing, or (2) refuses to hear evidence pertinent and material to the controversy. [Doc. 30-1 at 4]. Given the complexity of the issues underlying the claims in this arbitration, and the discovery necessary to present the evidence pertinent to such claims, it is evident that the parties would not be able to present their respective cases, and the panel would not be able to render a decision in the 30 days so allotted. The arbitration panel, however, possesses the power under the Commercial Arbitration Rules of the AAA to extend the date for the final disposition hearing and to set discovery deadlines within that timeframe. For this reason,[2] the 30-day decision period set forth in the arbitration clause is not unconscionable, illegal, or unconstitutional. It does not render the arbitration provision unenforceable. The Defendants' motions requesting the Court to hold the arbitration clause unenforceable or enjoin the arbitration proceeding already begun will be denied.

---

[2] It is for this reason, too, that TCGE did not waive arbitration. TCGE sought to enforce the arbitration clause as written by filing this action. TCGE acknowledges, however, that any failure on the part of the arbitration panel to extend the date for the final disposition hearing or otherwise allow for discovery would constitute sufficient cause for the vacatur of any final award.

Lastly, Metromont raises the issue of whether TCGE can compel it into arbitration with Yates/RCI. In short, despite the language of the adoption clause contained in the subcontract between Yates/RCI and Metromont, Metromont argues TCGE lacks contractual privity with it that would enable TCGE to bring it into binding arbitration along with Yates/RCI. [Doc. 42 at 7-8]. Metromont's privity argument is foreclosed by the Fourth Circuit's decision in <u>Maxum Foundations, Inc. v. Salus Corp.</u>, 779 F.2d 974, 979 (4th Cir. 1985) (holding subcontract language that "Subcontractor shall be bound by, and expressly assumes for the benefit of the Contractor, all obligations and liabilities which the Contract Documents impose upon the Contractor" manifested the parties' intent that the arbitration clause contained in the general contract had been incorporated by reference into the subcontract). Accordingly, Metromont's motion in this regard will be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the motions filed by Plaintiff Tribal Casino Gaming Enterprise to stay all pending deadlines, to stay this matter pending arbitration, and to compel arbitration as to Defendant W.G. Yates & Sons Construction Company, Defendant Rentenbach Constructors Incorporated, and Defendant Metromont Corporation [Docs. 30; 32], are hereby **GRANTED**. The motion to stay arbitration filed jointly by Defendant

W.G. Yates & Sons Construction Company and Defendant Rentenbach Constructors Incorporated [Doc. 47] is hereby **DENIED**. The motions to stay, deny, and enjoin the arbitration filed by Defendant Metromont Corporation [Docs. 43; 49] are hereby **DENIED**. The motion to expedite the consideration of Plaintiff's motions to stay this matter and compel arbitration filed by Defendant Metromont Corporation is hereby **GRANTED**. [Doc. 45].

**IT IS FURTHER ORDERED** that this matter is stayed pending the resolution of the parties' arbitration proceeding as ordered herein.

**IT IS SO ORDERED**.

Signed: July 1, 2016

Martin Reidinger
United States District Judge